GILBERT P. SHERWOOD, etc., Executor, *v.* THE AMERICAN BIBLE SOCIETY and others.

The right to take and grant property is of the essence of every corporation, whether created by license, by prescription, or by legislative act, and in the absence of legislative prohibition may take by all the usual modes of acquiring property. Per WRIGHT, J.

There is no statute in this State prohibiting corporations from acquiring personal property by bequest.

By comity we recognize the existence of corporations in other States, and permit them to exercise the powers with which they are endowed in our own, unless repugnant to our policy or injurious to our interests.

To constitute a charity in a legal sense the use must be public. Per WRIGHT, J.

There must also be a trustee competent to take the fund so as to secure the appropriation to the purpose intended. There can be no valid trust unless the title can vest in some person natural or artificial by favor of the gift itself.

APPEAL from judgment of Supreme Court. Action for construction of will. On the 25th December, 1858, Ann P. Sherwood, who owned personal estate of the value of $18,000, and real estate of the value of $4,500, died, leaving a will executed some nine days before her decease. This instrument contained the following bequests:

" *Second.* I give and bequeath unto the American Bible Society the sum of two thousand dollars.

" *Third.* I give to the American Tract Society two thousand dollars.

" *Fourth.* I give and bequeath unto the Arcot Mission of the Reformed Dutch Church the sum of three thousand dollars, to be used for the education of the heathen boy on whose account I have heretofore advanced money.

"*Fifth.* I give and bequeath unto the American Colonization Society one thousand dollars."

The residue of the testatrix's estate was given and devised to her two children, Gilbert P. Sherwood and May P. Sherwood, share and share alike; and her son Gilbert was appointed sole executor of the will.

In November, 1860, the executor brought an action to obtain a judicial construction of the instrument, alleging

71

that doubts had arisen whether the bequests to the American Bible Society, to the American Tract Society, the Arcot Mission of the Reformed Dutch Church, and to the American Colonization Society were valid and legal bequests ; and whether said societies are incorporated, or if incorporated, whether they can, by their acts of incorporation, severally take the bequests mentioned in the will. The several societies and May P. Sherwood were made defendants.

The action was tried at the New York Special Term, in December, 1861, before Mr. Justice GROVER, who, in addition to the facts above stated, found that the American Bible Society in the will named, was duly incorporated under and by virtue of an act of the legislature of the State, passed on the 25th March, 1841, for the purpose of publishing and promoting a general circulation of the holy scriptures without note or comment ; that the American Tract Society, in said will mentioned, was, by an act of the legislature of this State, passed on the 26th day of May, 1841, incorporated for the purpose of printing and circulating religious tracts and publications; that the Arcot Mission of the Reformed Dutch Church, in said will mentioned, is not, and never was, incorporated, but is a branch of the Board of Foreign Missions of the Reformed Protestant Dutch Church, in said will mentioned, which Board of Missions, at the time of the date of the will and the death of the testatrix, was not incorporated, but was incorporated by an act of the legislature of the State of New York passed in 1860.; and that the American Colonization Society, in said will mentioned, was, by an act of the general assembly of the State of Maryland, passed on the 26th day of December, 1836, incorporated for the purpose of colonizing the free people of color of the United States, and was by said act of incorporation empowered to take lands by devise, and money, goods or chattels by bequest.

His conclusions of law, from the facts thus found, were, and he decided, that the several legacies to the said American Bible Society, American Tract Society, and American Colonization Society are valid ; and that the same be paid by the executor from the estate of the testatrix, with costs to each

of the said legatees to be adjusted; also, that the legacy to the said Arcot Mission of the Reformed Dutch Church is invalid, but no costs are allowed to the plaintiff or to the Arcot Mission as against each other.

Judgment being entered in conformity to this decision, the plaintiff and the defendants, May P. Sherwood and the Arcot Mission, appealed to the General Term. The General Term affirmed the judgment, with costs of the appeal to be paid out of the estate of the deceased to the attorneys of all the parties in the action, including the Arcot Mission, whose costs on the appeal were adjusted at the sum of one hundred and thirteen dollars and fifty-four cents. From this judgment of affirmance the plaintiff and the defendants, May P. Sherwood and the Arcot Mission, appeal to this court.

*A. W. Bradford,* for the plaintiff.

*S. H. Thayer,* for the American Bible Society.

*G. N. Titus,* for the American Tract Society and the American Colonization Society.

*L. K. Miller,* for the Arcot Mission.

WRIGHT, J. It will be convenient to examine in order the validity of the bequests; first, to our own corporation; second, to the foreign corporation; and third, to the voluntary association, styled in the will, the "Arcot Mission of the Reformed Dutch Church."

1. In respect to the bequests to the Bible and Tract Societies: These societies were, in 1841, created by the legislature bodies corporate, and invested with the general and incidental powers and attributes of a corporation aggregate at common law. The purposes for which they were formed were specified; a limitation set upon the amount of income to be derived from property respectively held by them, and it was declared that they should possess the general powers, and be subject to the provisions of the title of the Revised Statutes, "Of the general powers, privileges and liabilities of corporations." (Laws of 1841, chap. 68, 266; 1 R. S., 599.)

·The powers enumerated in the general statute referred to, were those which at common law pertained to corporations aggregate, and the statute was but declaratory of the common law in respect to the rights of such corporation. The right to take and grant property, was and is of the essence of every corporation, whether created by license, or prescription, or by legislative act, and in the absence of any statutory prohibition, they may take by all the usual modes of acquiring property. They always had the right at common law to ·take· personal property *by bequest* (Angell & Ames on Corp., p. 111, § 6; *In the matter of Howe*, 1 Paige Ch., 214; ·*McCasler* v. *Orphan Asylum*, 9 Cow., 437; *Williams* v. *Williams*, 4 Seld., 530; *McDonough, Ex'r*, v. *Murdoch*, 15 How. [U. S.], 367; *Att'y-General* v. *Roper*, 2 P. Wms., 125; Grant on Corp., 116, 117); and I entertain no doubt that they have that right under our statutes. In the statute enumeration of the general powers of all corporations is that of *holding*, purchasing and conveying such real and personal estate as the purposes of the corporation may require, with the power to *hold* and *purchase* property. All other powers necessary to its exercise are given. (1 R. S., 599, §§ 1, 3.) This includes the power of taking by all the usual modes of acquiring property not forbidden to corporations by the statute. The statute of wills prohibits them from taking lands by *devise* unless expressly authorized by their charters, or by statute (2 R. S., 57, § 3), but there is no statute imposing any prohibition in respect to the manner of their acquiring personal property. The same legislature which enacted the statute concerning corporations, enacted the prohibition in the statute of wills; but unless the power to take lands by devise was embraced in the statutory grant of powers to corporations, the enactment of the prohibition was unnecessary. It was, I think, embraced, hence the necessity of the prohibition, and the inference is irresistible that the same grant of power vested in corporations the capacity of taking a pecuniary gift by will. It is urged that the statute has restricted corporations to the acquisition of personal property by *purchase* in the ordinary acceptation of the term; but the interpretation has

been repudiated by this court.    In *Downing* v. *Marshall* (23 N. Y., 366), it was held that the two corporations, the capacities of which we are now considering, were free to take money or personal property by testamentary gift, though it was to be raised by a conversion of real estate.    The gifts, therefore, to the American Bible Society and the American Tract Society, were not invalid for want of power or capacity, as corporations, to take them, and this is the only ground urged against their validity.

2. As to the bequest to the American Colonization Society: This is a foreign corporation, created for the purpose of colonizing the free people of color of the United States, and was expressly empowered by its charter to take money, goods and chattels by bequest.    The objection, therefore, of want of capacity to receive a testamentary gift has no application. But it is said that corporations are artificial beings, created by the sovereign authority, and can have no existence, or exercise any of their powers beyond the jurisdiction of the sovereignty which creates them.    It is true that the corporation in question can have no legal existence outside of the State of Maryland, but its existence there may be recognized in this State; and its residence in Maryland creates no insuperable objection to its receiving a gift of money by will from a resident of New York, it being authorized generally by its charter to take such gifts.    Of course, the exercise of this power depends for its validity upon our laws, and upon the sanction, express or implied, of the State; and so do the exercise within our jurisdiction of all other powers of corporations of another sovereignty.    By comity we recognize the existence of a corporation in another State, and permit it to exercise the powers with which it is endowed in our own, unless such exercise is repugnant to our policy, or injurious to our interests.    It is not more contrary to State policy to allow an artificial than a natural person of another State to take a testamentary gift of money from a donor residing here.    This would undoubtedly be otherwise if our own corporations were without the faculty of taking such donations; for a prohibition upon the latter would be a plain

indication of State policy on the subject. But as has been seen, our corporations are free to take personal property by bequest. The gift, therefore, to the American Colonization Society was not invalid.

3. The remaining bequest, the validity of which is questioned, is, in the words of the will, to "the Arcot Mission of the Reformed Dutch Church, to be used for the education of the heathen boy on whose account I have heretofore advanced money." The Arcot Mission was a voluntary association of male and female missionaries, located in southern Asia. This body of missionaries had its own officers, a secretary and treasurer, and was, at the death of the testator in 1858, associated with, or under the control of the Board of Foreign Missions of the Reformed Dutch Church, a body which was not incorporated until 1860. The object of the mission was "to preach, and teach both children and adults, and generally to disseminate christianity among the people in the region where it was located." Its functions were exercised at large, and not with reference to specific individuals. It cannot be implied from the expression "to be used for the education of the heathen boy on whose account I have heretofore advanced money," that some particular person was intended by the testatrix. In connection with the proofs, it is obvious that this and previous contributions were general — for our heathen boy — a form not unusual with a continuous charity when no particular recipient is within the view of the donor. Indeed if it was a trust credited for the use of a particular person, a single individual, it would not be a "charity" in a legal sense ; for to constitute a charity the use must be public in its nature. (*Ormnany* v. *Butcher*, 1 Turn. & Russ.) But whether the use be a charitable or private one, it is invalid, for the reason that there is no trustee competent to take the fund so as to secure its appropriation to the purpose intended. Where there is no trustee appointed having legal capacity to take and hold a gift, the legal estate can never vest and of course no use can be raised. There can be no valid trust, unless it be so constituted that a title can vest in some person natural or artificial by favor of the gift itself." (*Downing* v.

*Marshall*, 23 N. Y. 382.) As was truly said, in *Owens* v. *The Missionary Society* (4 Kern., 406), "to constitute a valid use there must be in all cases, first, a trustee legally competent to take and hold the property; and, secondly, a use for some purpose clearly defined." If there be no such trustee in the first instance, the attemped disposition fails. In fact there is no trust, and a court of chancery acquires no jurisdiction of the case. It cannot be pretended that the "Arcot Mission," a voluntary and fluctuating body of persons unknown to the law and irresponsible to the courts, was legally capable of taking the legacy under the will of the testatrix. Indeed the Board of Foreign Missions of the Reformed Dutch Church, under whose auspices the missionary labor at Arcot was conducted, was at the death of the testatrix itself incapable of receiving the gift; not having been incorporated for more than a year thereafter.

It may be deemed settled in this State that a voluntary, unincorporated association has not legal capacity to receive a donation, even for a purpose denominated "charitable." In *Owens* v. *The Missionary Society* (4 Kern., 380), the question was whether a bequest to such an association, for a "charitable" purpose was valid. It was held that it was not on account of its want of capacity to take the fund and effectuate the charity. So, also, a similar conclusion was reached in *Downing* v. *Marshall* (23 N. Y., 366). There the bequest was to an unincorporated body of persons, known as the Home Missionary Society. The purpose of the trust was religious or charitable. The fund was to be devoted to the same object as in the present case, viz., christian missionary labor. The bequest was held void for want of a competent trustee.

These conclusions upon the disputed matters in the will accord with those of the Supreme Court, and lead to an affirmance of its judgment in the suits.

I am in favor of such affirmance with costs of appeal to the three incorporated societies to be paid by the executor from the assets of the estate; but without costs of the appeal to the Arcot Mission. Indeed, so much of the judgment of

the General Term as gave costs of appeal to the Arcot Mission should be reversed.

All concur,

Judgment affirmed.