NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—May, 1882.

RILEY v. DIGGS.*

*In the matter of the probate of the will of* ALEXANDER
MCCUE, *deceased.*

A bequest of the proceeds of a sale of realty, directed to be effected after
the death of a life tenant or beneficiary, is a disposition of personal
property in which the ultimate beneficiary takes at once a vested
interest.

Foreign corporations may take such property, under wills executed by
persons domiciled in this State, as they are empowered to acquire by
the laws of the state of their creation.

The provision of L. 1848, ch. 319,—an act for the incorporation of benevo-
lent, charitable, etc., societies—declaring the invalidity of certain
devises and bequests contained in a will executed within two months
before testator's death, applies only to such dispositions made in favor
of a corporation organized under that statute.

Lawrence v. Elliott, 3 *Redf.*, 235—followed.

Testator, by his will, after giving a life interest in nearly all his property
to his wife, and providing a life legacy to one M., directed the execu-
tors, at his wife's death, to convert the residue into money and divide
it into five equal shares, which he bequeathed to five several religious
institutions ; further declaring, in case one of the latter ''is not able
to take, then I give, bequeath and devise this share to my executors
and trustees, and request them to distribute the same according to
my intention as indicated above.'' The institution thus referred to
was shown to be unincorporated.—*Held*,

1. That that institution was incapable of directly taking the bequest given
by the will.

2. That the alternative provision, whether precatory or imperative was
invalid, as either (1) leaving the distribution optional with the trus-
tees, without imposing on them any special obligation, or (2) as indi-
cating an intent which it failed definitely to disclose ; and, therefore,

3. That, as to the share in question, decedent died intestate.

Testator's will contained a legacy to the '' church of the Holy Redeemer

---

* Probate decree subsequently reversed for want of testamentary
capacity, and exercise of undue influence.

in third street.". It appeared that there was a church edifice in that street, known by that name, to which testator referred, owned and conducted by a corporation entitled the " Missionary Society of the most Holy Redeemer in the State of New York," having for its objects religious instruction of the poor, etc., and empowered to take devises and bequests, and to "possess and conduct churches."—

*Held*, that the false demonstration should not be permitted to defeat testator's purpose; and that this corporation took the legacy in question.

APPLICATION for the construction of bequests contained in decedent's will, upon proceedings instituted for the probate thereof by Catherine E. Diggs, and another, executrices therein named, and opposed by Thomas H. Riley and others, decedent's next of kin. The facts appear sufficiently in the opinion.

DUGROW & RAEGENER, *for proponents.*

BEACH & BROWN, *for contestants.*

ANDERSON & MAN, JAMES F. SWANTON, WM. P. BURR, *and* E. B. AMEND, *for societies.*

THE SURROGATE.—The decedent died on the 30th day of November, 1880. Eight days before his death, he executed an instrument which this court has decided to be his last will and testament. His wife, Catherine McCue, survived him and is still living, as are also certain of his nephews and nieces. As his next of kin, they have put in issue the validity, construction and effect of certain dispositions in the will.

That instrument provides that one Margaret Morehead shall receive $400, per annum, during the life of the testator's wife, and thereafter, while she herself lives, the interest on $8,000. The testator directs that, upon her death, the principal sum of $8,000 shall be

considered as part of his residuary estate, to be divided *pro rata* among his residuary legatees, according to the terms of the fourth clause of the will. By that fourth clause it is provided that, after the death of his wife (to whom is elsewhere given a life interest in nearly the whole estate), and after the eight thousand dollars have been invested for Mrs. Morehead's benefit, the executors shall convert into money the whole remaining estate, both real and personal, and divide the same into five equal shares. One of such shares is given to St. Mary's Roman Catholic Church in Grand street, another to St. Rosa's Roman Catholic Church in Cannon street, another to the Church of the Holy Redeemer in Third street, another to the Roman Catholic Church called "Mother of Sorrows," another to the Roman Catholic institution called St. Michael's Monastery, West Hoboken, New Jersey. As to each of the last three bequests, he declares that, if the beneficiary is not able to take, then the same is given, bequeathed and devised to his executors and trustees "to distribute this share according to his (my) intention as indicated above." The question submitted for my decision is the effect and construction of these various bequests to the institutions above named. By the direction to sell the real estate, and reduce it to money, there is effected an equitable conversion of the realty into personalty, which will not, however, become operative until the death of testator's widow. The bequests in question, therefore, so far as they shall be found valid, must be regarded as dispositions of personal property in which the beneficiaries take a vested interest (Ross v. Roberts, *2 Hun, 30 ; affi'd, 63 N. Y., 652 ;*

Chamberlain v. Chamberlain, *43 N. Y.*, *431;* Downing v. Marshall, *23 N. Y.*, *391*).

The bequests to St. Mary's Roman Catholic Church and to St. Rose's Roman Catholic Church are indisputably valid. They are both religious societies incorporated under chapter 60 of the Laws of 1813, as amended by *L. 1863, ch. 45*, and are entitled to take bequests (*L. 1875, ch. 443*).

As to the legacy to "The Church of the Holy Redeemer," it is not disputed that there is a church edifice in Third street in this city, which is known by that name, and which is the church referred to by the testator. It is owned and conducted by the "Missionary Society of the Most Holy Redeemer in the State of New York," a body incorporated by chapter 88 of the Laws of 1864. Among its objects are religious instruction, especially of poor and neglected persons, and the taking care of small congregations not able to support a clergyman. It is empowered to take property by devise and bequest, and "to possess and conduct churches." Manifestly the legacy in question was intended for this corporation, and the testator's mistake in designating the object of his bounty should not be permitted to defeat his purpose (Lefevre v. Lefevre, *59 N. Y.*, *434;* St. Luke's Home v. Association for Indigent Females, *52 N. Y.*, *191;* N. Y. Inst. for Blind v. How's ex'rs, *10 N. Y.*, *84;* Hornbeck v. Am. Bible Society, *2 Sandf. Ch.*, *145*).

By his bequest to "St. Michael's Monastery, in West Hoboken, New Jersey," it is not questioned that the testator meant to constitute his beneficiary "St. Michael's Passionist Monastery," an educational insti-

tution incorporated under the laws of the State of New Jersey, and authorized to take and hold devises and bequests.

The validity of this legacy is attacked upon the ground that the testator's will was made within two months of his death ; that by the act of 1848 (L. 1848, ch. 319, as am'd by L. 1870, ch. 51), no institution in this State, such as St. Michael's Monastery is conceded to be, could lay claim to such a bequest as is here under review ; and that it would be an invidious discrimination in favor of foreign corporations to allow them greater privileges than are accorded to those organized under our own laws.

This claim is not well founded. It is clear that foreign corporations may take such property under wills executed by persons domiciled in this State as such corporations are empowered to acquire by the laws of their creation (Sherwood v. Bible Soc'y, *1 Keyes, 565 ;* Harris v. Same, *4 Abb. N. S., 421 ;* Chamberlain v. Chamberlain, *43 N. Y., 424*).

Now, by the law of New Jersey, the validity of bequests to charitable institutions does not seem to be in any manner dependent upon the lapse of time between the execution of a will and the death of the testator.

If this particular bequest, then; is to be held invalid on the ground that it was made less than two months before the testator's death, it can only be because St. Michael's Monastery is expressly within the purview of our statute of 1848. But reference to that statute discloses, that only as to corporations organized under its own provisions is any restriction of the kind under discussion placed upon testamentary power. My prede-

cessor so held, in Lawrence v. Elliott (*3 Redf.*, *235*). The opposite view was urged upon the Court of Appeals, in Kerr v. Dougherty (*79 N. Y.*, *344*), but the question was not passed upon, as the bequest then under consideration was, for other reasons, adjudged to be invalid. The case of Chamberlain v. Chamberlain *43 N. Y.*, *425*) was one in which a bequest to the Centenary Fund Society of Pennsylvania was sustained under circumstances which would have invalidated it, if the claim of the present contestants is well founded. Sherwood v. Am. Bible Society (*1 Keyes*, *565*) affords another instance of a bequest which passed our highest court unchallenged, although open to the same objection which is here urged. The spirit of all the various decisions above cited, as well as the terms of the provision in the act of 1848, lead me to conclude that there is no general policy of this State which demands the extension of the restrictions in question to any corporations except such as are formed by virtue of that act. The legacy to St. Michael's Passionist Monastery is, therefore, declared valid.

It is conceded that the church called "The Mother of Sorrows" is unincorporated. It is accordingly incapable of directly taking the bequest which is given by the will (Owens v. Missionary Society, *14 N. Y.*, *380;* Downing v. Marshall, *23 N. Y.*, *366;* Betts v. Betts, *4 Abb. N. C.*, *403;* White v. Howard, *46 N. Y.*, *160*). The testator, however, declares : "In case the Church of the Mother of Sorrows is not able to take, then I give, bequeath and devise this share to my executors and trustees, and request them to distribute the same according to my intention as indicated

above." It must, of course, have been intended that the trustees and executors should take in their trust capacity whatever interest was bequeathed by this provision. Now whether the language be regarded as precatory or imperative, the bequest, as it seems to me, must be declared invalid. It is very manifestly so, if the testator intended to leave the distribution optional with the trustees, and to impose no special obligation which they were bound to discharge. On the other hand, if the testator had any distinct and definite purpose which he desired his trustees to execute, he has signally failed to make that purpose manifest. I cannot venture to put any construction whatever upon the expression, "according to my intention as indicated above." A variety of guesses might be made as to the meaning which those words were designed to convey, but no one of the guesses would be so much shrewder than the others as to compel confidence in its accuracy. I therefore find that, so far as relates to the property covered by this bequest, the decedent died intestate.

It is scarcely necessary to add that, if there are any limitations, not as yet suggested, upon the capacity of those beneficiaries whose bequests have been upheld, to take and hold property, their right to such bequests is subject to these limitations. It is subject, for example, to the restraints of L. 1860, ch. 360 (Lefevre v. Lefevre, *supra;* Chamberlain v. Chamberlain, *supra*). That act forbids any person, leaving at death a husband, wife, child or parent, from devising or bequeathing to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust, or otherwise, more than one half part of his or her

estate, after the payment of debts, and it invalidates any devise or bequest in excess of such one half part.

As the testator's wife survived him, the various corporations which are benefited by his will cannot take in the aggregate more than one half of his estate. To the extent that the sum of their legacies may be found to exceed this statutory limitation, such legacies will, of course, be ratably reduced.

But, as the enjoyment of the property in question is postponed until the death of the testator's widow, there is at present no need to make inquiry as to the value of the estate, for ascertaining what part of it, if any, has been ineffectually bequeathed.