(65 Misc. Rep. 77.)

### STANLEY v. PAYNE et al.

(Supreme Court, Special Term, Niagara County. November 23, 1909.)

1. TRUSTS (§ 11*)—FOR SALE OF LAND—VALIDITY.

A trust to sell lands is valid only where the sale is to be made for the benefit of creditors or legatees, or to satisfy a charge on the lands, the purposes enumerated in Real Property Law (Consol. Laws, c. 50) § 96, for which an express trust to sell may be created; and such a trust fails to the extent that it is not for such purposes.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 9; Dec. Dig. § 11.*]

2. TRUSTS (§ 11*)—TO RECEIVE AND APPLY RENTS AND PROFITS OF LAND—VALIDITY OF TRUST DEED.

A deed cannot be upheld, as creating a trust to receive and apply rents and profits of land, under Real Property Law (Consol. Laws, c. 50) § 96, subd. 3, where the power to rent is merely incidental to the main object of the trust, which is to sell.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 9; Dec. Dig. § 11.*]

3. PERPETUITIES (§ 6*)—TRUST TO RECEIVE RENTS AND PROFITS—SUSPENSION OF POWER OF ALIENATION.

Trusts to receive rents and profits cannot be measured by a definitive space of time which is not part of a life in being, and all such trusts necessarily suspend the power of alienation, because, under Real Property Law (Consol. Laws, c. 50) § 103, neither the trustee, nor the cestui que trust, nor both, can convey title during the term.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–56; Dec. Dig. § 6.*]

4. PERPETUITIES (§ 6*)—TRUST TO RECEIVE RENTS AND PROFITS—SUSPENSION OF POWER OF ALIENATION.

A trust to receive rents and profits for a term of years does not, unless the proceeds of the sale are impressed with the trust, necessarily suspend the power of alienation, as, for example, where the trustees are vested with a power of sale whereby they may, at any time, convey an absolute

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fee in possession, and the trust is thereby terminated and the fund released from its fetters.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–56; Dec. Dig. § 6.*]

5. PERPETUITIES (§ 6*)—TRUST TO RECEIVE RENTS AND PROFITS—SUSPENSION OF POWER OF ALIENATION.

An exercise of the power of sale of land by a trustee to receive rents and profits for a term of years would not, ipso facto, terminate the trust, where the trustee is authorized to turn the proceeds of sales back into the improvement of the real estate in his discretion, and it is only the net proceeds, remaining after the trustee has exercised his discretionary power as to improvement of lands, sale on mortgage or other security, and the like, which the trustee distributes to the co-owners during the term, and it is therefore a trust for a term of years, invalid under Real Property Law (Consol. Laws, c. 50) § 96, subd. 3, under which such an express trust may be created to the use of any person only during his life, or for any shorter term.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–56; Dec. Dig. § 6.*]

6. POWERS (§ 1*)—NATURE OF "POWER"—ESTATE OF GRANTEE.

A "power," which is defined by Real Property Law (Consol. Laws, c. 50) § 131, as "an authority to do an act in relation to real property, or to the creation or revocation of an estate therein, which the owner granting or reserving the power might himself lawfully perform," is a right to dispose of the legal estate by virtue of the statute; but it does not confer on the grantee, as such, any estate.

[Ed. Note.—For other cases, see Powers, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 6, pp. 5477, 5478; vol. 8. p. 7758.]

7. TRUSTS (§ 279*)—POWER IN TRUST—ESSENTIAL NATURE—DISTINCTION FROM AGENCY.

A power in trust places on the grantee a duty to execute it in favor of some person or persons other than himself, and involves a form of express fiduciary obligation similar to that of an express trust, and it differs therein from a mere agency, revocable at pleasure, which imposes no duty, but merely grants an authority to act.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 399; Dec. Dig. § 279.*]

8. TRUSTS (§ 16*) — UNSUCCESSFUL ATTEMPT TO CREATE EXPRESS TRUST AS CREATING POWER IN TRUST.

An unsuccessful attempt to create an express trust for a purpose specified in Real Property Law (Consol. Laws, c. 50) § 96, providing the purposes for which an express trust may be created, does not create a power in trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 14; Dec. Dig. § 16.*]

9. TRUSTS (§ 16*)—POWER IN TRUST TO SELL REAL ESTATE.

Real Property Law (Consol. Laws, c. 50) § 99, provides that an express trust for a purpose not specified in section 96 vests no estate in the trustees; but such a trust, if it directs or authorizes the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust, and the real property to which the trust relates shall remain in or descend to the persons otherwise entitled, subject to the execution of the trust as a power. *Held,* that a deed in trust to manage real property conveyed, and receive rents and profits thereof for a term of years, and to sell the same for the benefit of grantors, the co-owners, a purpose not specified in section 96, creates a valid general power of sale in trust to sell under the statute, but that the title to the real estate and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the proceeds is in grantors, who may resume at any time collection of rents and profits, or compel distribution of the proceeds of any sale, or otherwise manage the property subject to the power of sale.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 14; Dec. Dig. § 16.*]

10. TRUSTS (§ 279*)—EXERCISE OF POWER OF SALE BY ONE TENANT IN COMMON.

Though the same person cannot be at the same time both sole trustee and sole beneficiary, it does not follow that one tenant in common cannot exercise a power of sale in trust for co-owners.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 279.*]

Action by Cornelia R. Stanley against Eugene R. Payne and others. On motion for judgment on the pleadings. Decision in favor of defendants.

White & Stanley, for plaintiff.
August Becker, for defendants.

POUND, J. This is an action to compel the determination of a claim to nine separate parcels of real property, situate in Niagara county, made under a written instrument executed by the plaintiff and the defendants, parties of the first and second parts, which purports to convey said lands to the defendant Edward C. Payne, as trustee, for the purposes hereinafter enumerated, party of the third part. The deed is dated April 6, 1908, and duly recorded in Niagara county clerk's office. The grantors in the deed are the owners in common of the lands conveyed.

Plaintiff attacks the validity of the instrument on the ground that it creates no valid trust, nor power in trust, under the real property law (now Laws 1909, c. 52 [Consol. Laws, c. 50] arts. 4, 5), but creates only a revocable agency for the management of the property of the parties thereto. The portions of the deed which call for judicial interpretation read as follows:

"The party of the third part shall hold the said lands and premises in trust, and convert the same into money at such times and in such manner as he shall deem advisable. He shall collect, receive, and receipt for the rents, income, issues, and profits derived therefrom, and out of the proceeds derived from the conversion of such lands and premises, or out of the income derived therefrom, the party of the third part shall pay the taxes, assessments, and insurance, together with the cost of such necessary repairs and charges as shall be incident to the management, maintenance, and the protection of said lands and premises.

"The said party of the third part shall have the right and power, and it shall be legal for him, to contract for the sale of, and to sell, dispose of, and convey, such parts and portions of said lands and premises as and when he may deem it necessary so to do, and to execute, acknowledge, and deliver such deeds and instruments of conveyance or transfer as may be necessary or proper to pass title of the lands and premises so sold or disposed of, and likewise the party of the third part shall have the right and power, and it shall be lawful for him, in case of such sale or conveyance, to accept in part payment thereof a mortgage or other lien on the property so sold and conveyed, and to extend such terms of credit as he may deem advisable.

"The party of the third part shall have the right and power, and it shall be legal for him, to lease any of such lands and premises, to improve the

whole or any part thereof by the erection of buildings thereon, or otherwise, and generally to manage the same as in his judgment will tend to produce the best results therefrom. ＊ ＊ ＊

"The proceeds of said lands and premises, whether derived from conversion, or whether derived from rent, income, or profits, shall be commingled until in the judgment of the party of the third part the separation thereof can be conveniently made. ＊ ＊ ＊

"The net income derived from said lands and premises, and the net proceeds derived from the conversion of the same, or of any part thereof, shall in January and July of each year be distributed and paid over by the party of the third part to the parties entitled to the same, and in accordance with their respective title, interest, and ownership in and to said lands and premises, as such title, interest, and ownership existed immediately before the execution and delivery of this indenture. ＊ ＊ ＊

"The party of the third part shall be entitled to receive as his compensation as trustee, five per cent. (5%) of the gross income and of the gross proceeds derived from said trust estate.

"The trust hereby created shall continue for the period of ten (10) years from this date, and shall terminate at the end of said ten (10) years. ＊ ＊ ＊

"In case any part or portion of the lands and premises constituting the said trust estate remains unsold or undisposed of at the time of the termination of said trust, then the lands and premises so remaining, and all title and ownership thereto, shall revert to the parties hereto, their heirs and assigns, in conformity with their title, interest, and ownership as the same existed immediately before the execution and delivery of this indenture."

The intention of the co-owners clearly is to vest, by this instrument, in one of their number, as trustee, title to the real property, and sole discretionary and irrevocable authority to manage the same and its proceeds for them, for the term of 10 years. The trustee is to sell, but only at such times and in such manner and on such terms as to credit, security, and the like. as he may deem advisable. He shall collect the rents and profits, and pay all charges on said property. He may improve the premises by the erection of buildings thereon or otherwise. The proceeds, whether from sales or rentals, are commingled until in his judgment it is convenient to separate the same. The net income and proceeds of sales he is to divide among the co-owners semiannually. If lands remain unsold at the termination of the trust, they revert to the co-owners. Large powers are given by the grantors to the trustee, but solely for their own benefit as beneficiaries of the attempted trust. The trustee, by accepting the trust, agrees to manage and sell the property in accordance with the terms thereof.

The question is: Can such a trust, or power in trust, irrevocable, be validly created? However convenient and sensible this method of management of estates held in common may seem, it cannot be resorted to except in conformity with our statutes of trusts and powers.

"An express trust may be created for one or more of the following purposes: (1) To sell real property for the benefit of creditors. (2) To sell, mortgage or lease real property for the benefit of annuitants or other legatees, or for the purpose of satisfying any charge thereon. (3) To receive the rents and profits of real property, and apply them to the use of any person, during the life of that person, or for any shorter term, subject to the provisions of law relating thereto. (4) To receive the rents and profits of real property, and to accumulate the same for the purposes, and within the limits, prescribed by law." Real Property Law, § 96.

"Where an express trust relating to real property is created for any purpose not specified in the preceding sections of this article, no estate shall vest in the trustees. * * *" Real Property Law, § 99.

With us a trust to sell is valid only where the sale is to be made for the benefit of creditors or legatees, or for the purposes of satisfying a charge upon the lands. That such is not the purpose of the attempted trust to sell herein created is clear. To this extent, the trust fails. Heermans v. Burt, 78 N. Y. 259.

It is sought to uphold the deed as creating a trust to receive and apply the rents and profits of the land under subdivision 3 of section 96 of the real property law, supra. It was held in Heermans v. Burt, 78 N. Y. 259, that where the main object of the trust is to sell, and the power to rent is merely incidental, the conveyance cannot be upheld as creating a trust to receive rents and profits. The purpose of this deed seems to be to empower the trustee to lease the trust estate and receive rentals, as well as to sell, and to that extent the trust might be sustained, if it did not conflict with some other restriction imposed by the statute.

It is urged that this trust is void as suspending the power of alienation for a longer period than during the continuance of not more than two lives in being. Real Property Law, § 42. The rule is generally stated that trusts to receive rents and profits "cannot be measured by a definitive space of time, no part of a life in being" (Fowler on Real Property [2d Ed.] pp. 372, 381), and that all such trusts "necessarily suspend the power of alienation" (Chaplin on Suspension of the Power of Alienation, § 146), because neither the trustee, nor the cestui que trust, nor both, can convey title during the term. Real Property Law, § 103.

But it seems that such a trust for a term of years does not, unless the proceeds of the sale are impressed with the trust, necessarily suspend the power of alienation, as, for example, where the trustees are vested with a power of sale whereby they may, at any time, convey an absolute fee in possession, and the trust is thereby terminated, and the fund released from its fetters. Robert v. Corning, 89 N. Y. 225. In this case, however, an exercise of the power of sale would not, ipso facto, terminate the trust. The trustee is authorized to turn the proceeds of sales back into the improvement of the real estate, in his discretion. It is only the net proceeds, remaining after the trustee has exercised his discretionary power as to improvement of lands, sale on mortgage or other security, and the like, which the trustee distributes to the co-owners during the term. Allen v. Allen, 149 N. Y. 280, 286, 43 N. E. 626; Hagemeyer v. Saulpaugh, 97 App. Div. 535, 90 N. Y. Supp. 228. It is therefore a trust for a term of years, and invalid under subdivision 3, § 96, Real Property Law, supra.

It remains to be considered whether, the deed having failed to create any trust estate, a valid irrevocable power in trust to sell is vested in the trustee.

"A power is an authority to do an act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner, granting or reserving the power, might himself lawfully perform." Real Property Law, § 131.

It is a right to dispose of the legal estate by virtue of the statute; but it does not confer on the grantee, as such, any estate.

"A power, whether beneficial or in trust, is irrevocable, unless an authority to revoke it is granted or reserved in the instrument creating the power." Real Property Law, § 148.

A power in trust, in its essential nature, places upon the grantee thereof a duty to execute it in favor of some person or persons other than himself. It involves a form of express fiduciary obligation similar to that of an express trust, and it therein differs from a mere agency, revocable at pleasure, which imposes no duty, but merely grants an authority to act. An unsuccessful attempt to create an express trust for a purpose specified in section 96 of the real property law does not create a power in trust. Murray v. Miller, 178 N. Y. 316, 70 N. E. 870.

An express trust for a purpose not specified in said section vests no estate in the trustees; but such a trust, if it directs or authorizes the performance of any act which may be lawfully performed under a power, shall be valid as a power in trust. The real property to which the trust relates shall remain in or descend to the persons otherwise entitled, subject to the execution of the trust as a power. Real Property Law, § 99. A trust to sell for the benefit of co-owners is not a trust specified in section 96. Can such sale be lawfully performed under a power? If so, the instrument must be upheld to that extent.

It is urged that, in order to have a valid power in trust, the beneficiary must be some person other than the grantor, that these grantors cannot create a power in trust for their own benefit, and that the purpose of the attempted trust is therefore unlawful. In the case of Fellows v. Heermans, 4 Lans. 230, it was held, Miller, J., dissenting, that a conveyance of lands in trust to sell and pay over to the grantor during his life all moneys received created a valid irrevocable power in trust. When the deed under consideration in the case last cited came before the Court of Appeals, that court (Heermans v. Robertson, 64 N. Y., at page 346, and Heermans v. Burt, 78 N. Y., at page 267), while holding, contra to the General Term in the Fellows Case, supra, that no valid trust had been created, declined to consider the question whether a valid power in trust was created by the instrument.

"The principle on which judges are called to act in regard to all contracts and assurances is 'ut res magis valeat quam pereat'; that is to say, the instrument in question should rather be made available than suffered to fail." Cowen, J., in Darling v. Rogers, 22 Wend. 483.

At common law, trusts to sell for the benefit of the grantor were lawful. The Revised Statutes have, since January 1, 1830, prohibited all express trusts, except the four above specified in section 96 of the present real property law, and latterly, perhaps, certain trusts for charitable purposes. Reeves on Real Property, pp. 493–503. All other forms of express trusts, which were otherwise valid and active, were then changed into powers in trust. It follows that this instrument creates a valid general power in trust to sell, under the statute, but that the title to the real estate and to the proceeds thereof is in

the grantors, who may resume, at any time, the collection of rents and profits, or compel the distribution of the proceeds of any sale, or otherwise manage the property subject to the power of sale.

It is argued that Edward C. Payne cannot be both trustee and beneficiary. Doubtless the same person cannot be at the same time both sole trustee and sole beneficiary. Woodward v. James, 115 N. Y., at page 357 (22 N. E. 150). But it does not follow that one tenant in common cannot exercise a power of sale in trust for co-owners.

The deed must be upheld as vesting in the trustee a power of sale in trust, as above stated.